FILED

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2009 SEP 11 PM 2: 43

MID~~~~ ~~~~ OF FLORID~
JACKSONVILLE. FLORIDA

FIRST BAPTIST CHURCH OF
MANDARIN, INC., a Florida
Corporation; DR. GARY L.
WILLIAMS, SR.; REV. STEVE
NEWBILL, and TERRI F. STEPTER,

        Plaintiffs,

v.                          CASE NO. 3:09-cv-926-4-34 JRK

ST. JOHNS COUNTY, a Political
Subdivision of the State of
Florida,

        Defendant.

_____/

### COMPLAINT SEEKING
### DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, FIRST BAPTIST CHURCH OF MANDARIN, INC. (hereinafter "First Baptist"), through its undersigned counsel brings this Complaint seeking declaratory and injunctive relief, and for other relief, from Defendant, ST. JOHNS COUNTY (hereinafter "County") and in support thereof, allege as follows:

### Parties, Jurisdiction and Venue

1. First Baptist is a Florida non-profit corporation located at 3990 Loretto Road, Jacksonville, Florida.

2. In September 2006, First Baptist purchased approximately 31.75 acres of land located at 1345 Roberts Road, in St. Johns County, Florida (hereinafter referred to as the "Property").

3.  The Property is located on Roberts Road which is a two lane road connecting State Route 13 and County Road 244.

4.  The Property is currently zoned Open Rural ("OR") with a Future Land Used Designation of Residential-B.

5.  A Planned Unit Development ("PUD") is an allowable zoning on the Property.

6.  Plaintiff, Dr. Gary L. Williams, Sr., is the pastor and the official representative of First Baptist.

7.  Plaintiff, Dr. Gary L. Williams, Sr., has sought unsuccessfully to operate a church, ancillary uses, and a complimentary commercial business center, as well as carry out religious services on the Property.

8.  Plaintiff, Reverend Steve Newbill, is a minister for First Baptist who desires being able to worship and preach on the Property.

9.  Plaintiff, Terri F. Stepter, lives in St. Johns County, and desires being able to worship on the Property.

10. The County is a political subdivision of the State of Florida, acting by and through the St. Johns County Board of County Commissioners ("Board"), the government entity that is statutorily empowered to enact and enforce the County Comprehensive Plan, land development regulations, and zoning districts for the unincorporated areas of St. Johns County, Florida.

11. The County has denied First Baptist's request for a rezoning from OR to PUD, and has at all times material to this lawsuit, engaged in official actions and conduct which has prohibited the individual Plaintiffs and First Baptist from using the Property to build its church, ancillary facilities and commercial business center.

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

2

13. Venue is proper in the Middle District as the Property that is the subject of this action is located in St. Johns County which is situated therein.

### Background

14. Plaintiffs seek a declaration of their rights and injunctive relief to permit them to use to the maximum extent protected by law, the Property for religious exercise and assembly, including without limitation prayer, worship, religious fellowship, and the allowable commercial space in accordance with Part 2.02.00 of the St. Johns County Land Development Code.

15. The Property is located in the Northwest Sector Overlay of St. Johns County.

16. Policy A.2.1.8 of the Comprehensive Plan for the Northwest Sector Overlay provides that

> the overall goal of the Northwest Sector Overlay is to achieve a diversity of land uses provided by a mixture of residential, retail, and office uses at a minimum ratio of one hundred and twelve (112) square feet of retail and office space per dwelling unit, and civic space at a minimum ratio of 30 square feet per dwelling unit.

17. The County has classified the Property in the Countywide Zoning Map as OR and the church and ancillary cultural and institutional uses are currently allowable by right on the Property.

18. Once rezoned to PUD, Neighborhood Business and Commercial and Office and Professional Services as proposed in the commercial business center would also be an allowable use on the property.

19. This rezoning and the completion of the PUD requested would further the County's goal of achieving a diversity of land use in the Northwest Sector Overlay as required by its Comprehensive Plan.

20. Prior to Plaintiffs' application, the County had never denied a PUD application in Residential-B land use with a commercial component in the Northwest Sector.

3

21. Currently, based on information and belief, the following properties located in the general

vicinity of the Property have approved PUDs and/or are similarly situated to Plaintiffs:

    a.  San Juan Del Rio Catholic Church and Complex;

    b.  Race Track PUD;

    c.  Mill Creek PUD;

    d.  Durbin Crossing PUD;

    e.  Ponte Vedra Valley PUD;

    f.  Sunshine 16 PUD;

    g.  Rivertown PUD;

    h.  Southshore Plaza PUD;

    i.  Palencia North PUD;

    j.  Chalk Business Center PUD;

    k.  Aberdeen PUD;

    l.  Julington Creek Plantation PUD;

    m.  Twin Creeks PUD;

    n.  Cobblestone Village I project;

    o.  North St. Johns Commerce Center project;

    p.  Vinings PUD;

    q.  St. Johns Forest PUD;

    r.  Southlake PUD;

    s.  Silverleaf PUD;

    t.  Johns Creek PUD;

    u.  South Hampton PUD;

v.   Ashford Mills PUD;

w.  Anderson Greenbriar PUD;

x.   Cunningham Creek PUD;

y.   Mallard Landing PUD;

z.   Oak Harbor PUD;

aa. Riverpoint PUD;

bb. Winchester PUD;

cc. Worthington PUD;

dd. Bartram Plantation PUD;

ee. Bartram Trail PUD;

ff.  Cimarrone PUD;

gg. Stonehurst Plantation PUD;

hh. Johns Glen PUD;

ii.  Bartram Park PUD;

jj.  St. Johns Golf and Country Club PUD;

kk. Wingfield Glen PUD;

ll.  Plantation PUD;

mm.       Industrial PUD;

nn. N. St. Johns Industrial Park; and

oo. Sandy Creek PUD.

22. At all times material to the instant lawsuit, Roberts Road was not classified as a

constrained roadway in the County Comprehensive Plan nor have improvements to Roberts Road

been identified in the long range planning for the County.

23. In addition to this federal action, in response to the actions of the Defendant, Plaintiffs have filed a Complaint Seeking Declaratory Judgment pursuant to Section 163.3215, Florida Statutes, and a Petition for Writ of Certiorari in the Seventh Circuit Court in and for St. Johns County, Florida (Case Numbers CA09-2212 and CA09-2213, respectively).

### Property Purchase and Initial Application Process

24. First Baptist purchased the Property in September 2006 with the intent of developing its church and ancillary facilities and expanding its mission to include a commercial business center component that could contribute to its youth ministry through First Baptist's Jesus Christ Institute ("JCI").

25. JCI is a program which pairs young church members with local professionals who are friends of the Church in a mentor-protégé relationship so that they may grow spiritually and professionally.

26. In purchasing the Property, Plaintiffs relied on the fact that a place of worship is a permitted use in the OR zoning district, other PUDs similarly situated to the proposed use had been approved in the County, the fact that a PUD is an allowable use for the property, and that the Comprehensive Plan policy favored and required greater diversity of land use in an area that had become predominantly residential in nature.

27. First Baptist acted in good faith reliance upon the permitted uses as set forth in the Land Development Code and the Comprehensive Plan, as well as on the statutory and constitutional protections that respect religious freedom and equal protection under the law.

28. First Baptist began its application process for transportation concurrency in August, 2006 and for a rezoning in December 2007.

6

29. First Baptist's application went through almost one year of review, comment and response, as Plaintiffs addressed issues raised by numerous reviewing County departments.

30. First Baptist had individual meetings with County Commissioners to explain the plan of development and answer questions.

31. In accordance with Comprehensive Plan Section A.2.1.7, Plaintiffs held two public meetings on October 2, and October 27, 2008, to allow public input on the proposed plan of development.

32. Through these meetings, members of the community from neighboring properties or subdivisions created an "Organized Opposition" to Plaintiffs rezoning application.

33. Inflammatory comments were made by community members at the October 27, 2008 public meeting in opposition to Plaintiffs' proposal.

34. At the October 27, 2008, public meeting, St. Johns County sheriffs were called to restore the peace and prevent further disturbance.

35. Members of the public wrote letters included in the record of the public hearings containing comments threatening sitting County Commissioners with electoral defeat should they approve First Baptist's application.

36. On March 19, 2009, Plaintiffs appeared before the County's Planning and Zoning Agency ("PZA") and presented their application.

37. Following an approximately six-hour hearing, which included arguments from the Organized Opposition's Counsel and certain members of the community who opposed Plaintiffs' proposed use of the Property, the PZA recommended denial of the application.

7

## Board of County Commissioners Hearing, May 12, 2009

38. Plaintiffs continued to modify the application in response to statements made at the PZA hearing and submitted an amended application with a revised PUD text for the de novo review of the rezoning application by the Board of County Commission ("Board").

39. Members of the Organized Opposition met with county officials including the County Administrator Michael Wanchick and individual County Commissioners including, but not limited to, Chairperson Cyndi Stevenson, to propose relocating First Baptist to another geographic location.

40. Plaintiffs' rezoning application was heard by the Board in a de novo hearing on May 12, 2009.

41. The County Staff in its pre-prepared staff analysis recommended denial of the application because (1) staff found the commercial uses were incompatible with surrounding properties due to location and use of adjacent property; (2) staff found the application did not meet the requirements of the Comprehensive Plan and Land Development Code; and (3) staff characterized the application's commercial center as strip commercial development and considered it to be urban sprawl.

42. In response to the County Staff's comments and analysis, Plaintiffs' experts, which included a certified planner, architect, and traffic engineer, testified as to the application's consistency with the Comprehensive Plan and the Land Development Code and addressed all County staff technical comments.

43. During Board deliberation, Chairperson Stevenson publically supported the Organized Opposition's suggestion of steering First Baptist to another geographic location.

8

44. Neither the County, the Organized Opposition, nor members of the public provided competent and substantial evidence that Petitioner's application was inconsistent with the Comprehensive Plan and the Land Development Code.

45. Despite having no competent substantial evidence in the record to support the decision, on June 8, 2009, the Chair of the Board rendered an Order Denying Plaintiffs rezoning application. See Exhibit "A."

46. The Order consisted of nine pre-prepared Findings of Fact that were adopted in total at the conclusion of the May 12, 2009, hearing and denied Plaintiffs' application based on those Findings of Fact.

47. As a result of the County's denial, First Baptist, Pastor Williams and Reverend Newbill are unable to meet the needs of their expanding congregation because they are unable to proceed with their Master Development Plan, and as consequence, Terri Stepter and other members of the church's congregation cannot practice their faith on the Property or take advantage of a proximate location for the church's JCI.

## COUNT I: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
(Substantive Due Process)

48. Plaintiffs re-allege and incorporate herein by reference the allegations in Paragraphs 1 through 47 of this Complaint.

49. This is an action under 42 U.S.C. § 1983 for declaratory and injunctive relief, and jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(3).

50. The County, acting under color of state law, has violated 42 U.S.C. § 1983 by depriving Plaintiffs of their constitutionally protected rights secured by the Fourteenth Amendment of the United States Constitution.

51. The County's Comprehensive Plan, specifically, Policy A.2.1.8, indicates that Plaintiffs' PUD application would assist the County in achieving the County's goal of land use diversity in the Northwest Sector.

52. The County's denial of Plaintiffs' application is arbitrary, capricious, and unreasonable, has no substantial relation to the public health, safety, morals or general welfare, and does not substantially advance a legitimate public purpose and, therefore, is an invalid exercise of the police power and violates Plaintiffs' constitutionally protected substantive due process rights.

53. In addition to being arbitrary, capricious and unreasonable, the County's denial of Plaintiff's application is based on impermissible political animus rooted in irrational neighborhood pressure based on religious prejudice.

54. The County's denial of Plaintiffs' application where the County has arbitrarily deemed Plaintiffs' application "inconsistent" with the County Comprehensive Plan and "not compatible" with the surrounding land use has irreparably harmed Plaintiffs by depriving them of their constitutionally protected legal rights.

55. The County's denial of Plaintiffs' application and its arbitrary application of the County Comprehensive Plan and Land Development Code does not allow Plaintiffs to improve and utilize the Property.

56. The County's action denies Plaintiffs' their property rights without substantially advancing a legitimate public purpose.

57. Plaintiffs have no adequate remedy at law.

58. Plaintiffs have suffered and continue to suffer irreparable harm.

59. Plaintiffs have a substantial likelihood of prevailing on the merits.

60. The County's wrongful denial is without any justification or privilege.

61. Plaintiffs have been forced to prosecute this action and have retained the undersigned Counsel to represent them in this action and, therefore, are entitled to their attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs pray that this Court enter an Order

    i.    Declaring the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to be arbitrary, capricious, and unreasonable, with no substantial relation to the public health, safety, morals or general welfare, and not substantially advancing a legitimate public purpose;

    ii.    Finding the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to be impermissible because it is based on political animus;

    iii.    Declaring the County's stated interest in denying Plaintiff's application for PUD is far outweighed by Plaintiffs' constitutional and legal interests in the rights and privileges afforded to them by the Fourteenth Amendment of the United States Constitution;

    iv.    Providing preliminary and permanent injunctive relief by directing the County to grant Plaintiffs' PUD application to use the Property to construct its sanctuary, and other structures for ancillary and commercial uses as allowed by the County Comprehensive Plan and Land Development Code;

    v.    Awarding reasonable attorney fees and costs as permitted by law;

    vi.    Awarding Plaintiffs compensatory and consequential damages; and

    vii.    Granting such other and further relief as the Court deems just and proper.

## COUNT II:  VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983
(Equal Protection, Religion)

62. Plaintiffs re-allege and incorporate herein by reference the allegations in Paragraphs 1 through 61 of this Complaint.

63. This is an action under 42 U.S.C. § 1983 for declaratory and injunctive relief, and jurisdiction is property under 28 U.S.C. §§ 1331 and 1343(a)(3).

64. The County, acting under color of state law, has violated 42 U.S.C. § 1983 by depriving Plaintiffs of their constitutionally protected rights and privileges secured by the First and Fourteenth Amendments of the United States Constitution.

65. The County's denial of Plaintiffs' PUD application does not afford Plaintiffs equal protection under the law because the Board acted with unfettered discretion, using subjective criteria, to grant the rezoning applications of others and refrain from enforcing its Land Development Code on other similarly situated property owners, while treating Plaintiffs in a discriminatory fashion on the basis of religion.

66. The County's wrongful actions do not substantially advance a legitimate public purpose; further, the County's denial deprives the Plaintiffs of a reasonable use of the Property in violation of the First and Fourteenth Amendments of the Constitution.

67. By its own series of wrongful, religious-based, governmental actions and land use approvals, the County has substantially undermined and controverted Policy A.2.1.8 of the Comprehensive Plan which requires development in the Northwest Sector Overlay to achieve a diversity of land uses that includes a mixture of residential, retail and office uses at a minimum ratio of one hundred and twelve (112) square feet of retail and office space per dwelling unit, and civic space at a minimum ratio of 30 square feet per dwelling unit.

68. Without explanation, the County has approved other similarly situated PUDs in the area closely proximate to the Property and allowed similar uses to another similarly situated religious denominations without requiring a PUD or other equivalent land use approvals at all, as required by the County's Comprehensive Plan and Land Development Code.

69. The County's treatment of Plaintiffs' application departs substantially from the County's treatment of these other similarly situated applicants and landowners that are secular or of a different religious affiliation.

70. The County's arbitrary and capricious application of its land use regulations which were applied through formal and informal practices and procedures and resulted in an individualized assessment of Plaintiffs' application and a selective, discriminate denial of Plaintiffs' application has deprived Plaintiffs of their constitutionally protected equal protection rights.

71. Plaintiffs have no adequate remedy at law.

72. Plaintiffs have suffered and continue to suffer irreparable harm.

73. Plaintiffs have a substantial likelihood of prevailing on the merits.

74. The County's wrongful denial is without any justification or privilege.

75. Plaintiffs have been forced to prosecute this action and have retained the undersigned Counsel to represent them in this action and, therefore, are entitled to their attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiffs pray that this Court enter an Order

    i.    Declaring the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to be arbitrary, capricious, and unreasonable, with no substantial relation to the public health,

safety, morals or general welfare, and not substantially advancing a legitimate public purpose;

ii.    Finding the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to be a substantial departure from its consideration of previous secular and other religious denomination applicants and/or landowners and impermissible because of its discriminatory purpose;

iii.    Declaring the County's stated interest in denying Plaintiff's application for PUD is far outweighed by Plaintiffs' constitutional and legal interests in the rights and privileges afforded to them by the First and Fourteenth Amendments of the United States Constitution;

iv.    Providing preliminary and permanent injunctive relief by granting Plaintiffs' PUD application to use the Property to construct its sanctuary, and other structures for ancillary and commercial uses as allowed by the County Comprehensive Plan and Land Development Code;

v.    Awarding reasonable attorney fees and costs as permitted by law;

vi.    Awarding Plaintiffs compensatory and consequential damages; and

vii.    Granting such other and further relief as the Court deems just and proper.

### COUNT III:  VIOLATION OF THE RELIGIOUS LAND USE
### AND INSTITUTIONALIZED PERSONS ACT OF 2000
(Equal Terms and Nondiscrimination)

76. Plaintiffs re-allege and incorporate herein by reference the allegations in Paragraphs 1 through 75 of this Complaint.

14

77. This is an action under 42 U.S.C. § 2000cc, known as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

78. Plaintiffs are, or are a part of, a religious institution.

79. Plaintiffs' PUD application is subject to land use regulation by Defendant.

80. The County's denial of Plaintiffs' application for PUD is a violation of the 42 U.S.C. § 2000cc(b)(1) which requires equal treatment of secular and religious institutions.

81. The County's denial of Plaintiffs' application for PUD is also a violation of 42 U.S.C. § 2000cc(b)(2) which forbids the discriminatory application of land use regulations toward religious institutions.

82. In denying Plaintiffs' application for PUD, the County subtly or covertly departed from requirements of neutrality and general applicability by performing a discriminate, individualized application of the County Comprehensive Plan and Land Development Code.

83. Plaintiffs are being treated on less than equal terms with nonreligious assemblies or institutions that have either been granted PUDs or performed land use improvements without the need for additional land use approvals.

84. Specifically, the County's unequal and discriminatory treatment is demonstrated by the following PUDs which have been approved by the County or other land uses in proximity to Plaintiffs' Property:

> a. **Racetrack PUD**, approved on May 16, 2006, is located on Racetrack Road, in the Northwest Sector of St. Johns County. Similarly to First Baptist's property, it is located in Residential-B land use category and is surrounded by a residential subdivision, schools, and a horse farm. It

15

received approval for double the amount of commercial square footage requested by First Baptist,

b.  **Mill Creek PUD,** approved on November 9, 2005, is located adjacent and south of First Baptist's property on Roberts Road.  It generated nearly identical numbers of traffic counts as First Baptist's application, and was approved by the County for rezoning to PUD.

c.  **San Juan Del Rio Catholic Church and Complex**. It is located on a two lane road with no turn lanes, no sidewalk, nor bicycle path, in a land use category allowing for lesser density (Residential-A) and similarly zoned OR, yet it has expanded its uses to include commercial resort, school, and hotel uses without being required to rezone, nor provide for any technical improvements to the roadway system.

d.  The following PUD applications in Residential Land Uses or alongside residential uses with a commercial component in the Northwest Sector and located in the vicinity of the Plaintiffs' PUD have all been approved by the County:  Rivertown PUD, Aberdeen PUD, Durbin Crossing PUD, Julington Creek Plantation PUD, Johns Creek PUD, Southlake PUD, Southhampton PUD, St. Johns Forest PUD, Vinings PUD, Silverleaf PUD, and Ashford Mills PUD.

e.  The following residential developments located on Roberts Road have also been approved despite the fact that their traffic impacts the same roadway as the Plantiffs' PUD:  Cunningham Creek PUD, Mill Creek PUD, Oak Harbor PUD, and Mallard Landing PUD.

85. The County's denial of Plaintiffs' PUD application is inconsistent with other land use decisions for other similarly situated nonreligious assemblies or institutions, is not narrowly tailored, and does not achieve a compelling government interest.

86. Further, the County's approval of these other PUD applications or refusal to apply the County's Land Development Code to other landowners wholly contradicts and undermines the County's purported interest of avoiding a "precedent for the introduction of an inappropriate use into an area," thus further demonstrating the existence of an improper ulterior motive. See Exhibit "A," Order Denying Rezoning.

87. By its own series of wrongful, religious-based, governmental actions and land use approvals, the County has substantially undermined and controverted Policy A.2.1.8 of the Comprehensive Plan which requires development in the Northwest Sector Overlay to achieve a diversity of land uses that includes a mixture of residential, retail and office uses at a minimum ratio of one hundred and twelve (112) square feet of retail and office space per dwelling unit, and civic space at a minimum ratio of 30 square feet per dwelling unit.

88. Moreover, the County's denial of Plaintiffs' PUD application further ignores Policy A.2.1.8, as the PUD denied would have assisted the County in reaching the required diversity of land use in the Northwest Sector Overlay.

89. The County's interest in rejecting Plaintiffs' PUD application does not outweigh First Baptist's interest in developing its property.

90. The County's denial of Plaintiffs' PUD application where no other similarly situated applicants have been denied amounts to selective enforcement against a religious institution.

91. Plaintiffs demand relief and equal treatment under the law.

92. Plaintiffs have suffered and continue to suffer irreparable harm.

93. Plaintiffs have a substantial likelihood of prevailing on the merits.

94. The County's wrongful denial is without any justification or privilege.

95. Plaintiffs have been forced to prosecute this action and have retained the undersigned Counsel to represent them in this action, and therefore, are entitled to their attorney fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order

i.    Declaring the County's denial of Plaintiffs' application for PUD and its application of the County's Comprehensive Plan and Land Development Code to Plaintiffs application is a violation of the   Religious Land Use and Institutionalized Persons Act of 2000, Sections 2000cc(b)(1) and 2000cc(b)(2);

ii.   Declaring the County's denial of Plaintiffs' application does not meet a compelling government interest or is not the least restrictive means to further that government interest;

iii.  Providing preliminary and permanent injunctive relief by directing the County to grant Plaintiffs' PUD application to use the Property to construct its sanctuary, and other structures for ancillary and commercial uses as allowed by the County Comprehensive Plan and Land Development Code;

iv.   Awarding reasonable attorney fees and costs as permitted by law;

v.    Awarding Plaintiffs compensatory and consequential damages; and

vi.   Granting such other and further relief as the Court deems just and proper.

## COUNT IV: VIOLATION OF THE RELIGIOUS LAND USE
## AND INSTITUTIONALIZED PERSONS ACT OF 2000
(Unreasonable Limit on Religious Institution)

96. Plaintiffs re-allege and incorporate herein by reference the allegations in Paragraphs 1 through 95 of this Complaint.

97. This is an action under 42 U.S.C. § 2000cc, known as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

98. Plaintiffs are, or are a part of, a religious institution.

99. The County's denial of Plaintiffs' application for PUD is a violation of 42 U.S.C. § 2000cc(b)(3)(B) which prohibits the County from implementing its land use regulations in a manner that unreasonably limits religious institutions or structures within a jurisdiction.

100.    A place of worship is a permitted use on Plaintiffs Property and a PUD is an allowable use for the Property.

101.    In denying Plaintiffs' application for PUD, the County exhibited unbridled discretion which resulted in an unreasonable limitation on Plaintiffs' property rights.

102.    By requiring Plaintiffs to seek out a more "suitable" parcel so that First Baptist could combine its planned uses on one parcel, the County would subject Plaintiffs to unreasonable delay, uncertainty and expense by having to restart its application process to satisfy land use regulations which were already satisfied with its current PUD application for the current location on Roberts Road.

103.    Plaintiffs have no adequate remedy at law.

104.    Plaintiffs have suffered and continue to suffer irreparable harm.

105.    Plaintiffs have a substantial likelihood of prevailing on the merits.

19

106.    The County's wrongful denial is without any justification or privilege and the County does not have a compelling interest which is served by this disparate and unreasonable treatment.

107.    Plaintiffs have been forced to prosecute this action and have retained the undersigned Counsel to represent them in this action and, therefore, are entitled to their attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiffs pray that this Court enter an Order

i.    Declaring the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to be an unreasonable limitation of Plaintiffs' property rights within the County and a violation of the Religious Land use and Institutionalized Person Act of 2000, section 2000cc(b)(3)(B).

ii.    Providing preliminary and permanent injunctive relief by directing the County to grant Plaintiffs' PUD Application to use the Property to construct its sanctuary, and other structures for ancillary and commercial uses as allowed by the County Comprehensive Plan and Land Development Code;

iii.    Awarding reasonable attorney fees and costs as permitted by law; and

iv.    Awarding Plaintiffs compensatory and consequential damages; and

v.    Granting such other and further relief as the Court deems just and proper.

### COUNT V:  VIOLATION OF FLORIDA'S RELIGIOUS FREEDOM RESTORATION ACT

108.    Plaintiffs re-allege and incorporate herein by reference the allegations in Paragraphs 1 through 107 of this Complaint.

109.     This is an action pursuant to Chapter 761, Florida Statutes, known as the Religious Freedom Restoration Act of 1998.

110.     This Court has pendent jurisdiction to adjudicate this claim and join it with Counts I through IV since all Counts arise from the same set of facts, circumstances, and/or events.

111.     The County, acting under color of state law, has substantially burdened Plaintiffs' free exercise of religion by denying Plaintiffs' PUD application in spite of the fact that it was consistent with both the Comprehensive Plan and Land Development Code, under which the County has formal procedures that permit it to make an individualized assessment of Plaintiffs application for a PUD that included a sanctuary, ancillary church uses and a commercial business center used by the church to exercise religion through its JCI and the development of the church's young adults.

112.     The County's consideration of Plaintiffs' PUD application was conducted by a subjective criteria which was not applied to other non-religious assemblies or institutions that previously applied for and received PUD approvals.

113.     The County's outright denial of Plaintiffs' PUD application did not further a compelling governmental interest.

114.     The County's outright denial of Plaintiffs' PUD application was not the least restrictive means for furthering a compelling governmental interest, assuming such interest were to exist.

115.     Plaintiffs have expended considerable monies and effort in preparing their application for PUD; further, Plaintiffs have been forced to prosecute this action and have retained the undersigned Counsel to represent them in this action.

21

116.    Plaintiffs have no adequate remedy at law.

117.    Plaintiffs have suffered and continue to suffer irreparable harm.

118.    Plaintiffs have a substantial likelihood of prevailing on the merits.

119.    Plaintiffs demand relief from the substantial burden on their exercise of religion as stated above.

120.    Pursuant to Section 761.04, Florida Statutes, Plaintiffs are entitled to their attorney fees and costs in bringing this claim.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order

   i.    Declaring the County's denial of Plaintiffs application for PUD and its application of the County's Comprehensive Plan and Land Development Code to Plaintiffs application to be an unconstitutional deprivation of Plaintiffs' rights as provided in the Florida's Constitution and Florida's Religious Freedom Restoration Act;

   ii.    Declaring the County's denial of Plaintiffs' application does not meet a compelling government interest and/or is not the least restrictive means to further a government interest as required by Section 761.03, Florida Statutes;

   iii.    Providing preliminary and permanent injunctive relief by granting Plaintiffs' PUD Application to use the Property to construct its sanctuary, and other structures for ancillary and commercial uses as allowed by the County Comprehensive Plan and Land Development Code;

   iv.    Award reasonable attorney fees and costs as permitted by law; and

   v.    Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this __11th__ day of September, 2009.

LEWIS, LONGMAN & WALKER, P.A.

KENNETH G. SPILLIAS
Florida Bar No. 253480
Lewis, Longman & Walker, P.A.
1700 Palm Beach Lakes Blvd.
Suite 1000
West Palm Beach, FL 33401
(561) 640-0820 - Office
(561) 640-8202 - Fax

ISABELLE LOPEZ
Florida Bar No. 089818
F. JOSEPH ULLO, JR.
Florida Bar No. 027166
Lewis, Longman & Walker, P.A.
245 Riverside Avenue, Suite 150
Jacksonville, FL 32202
(904) 353-6410 – Office
(904) 353-7619 – Fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and complete copy of the foregoing has been delivered to Patrick F. McCormack, Esq., and James G. Whitehouse, Esq., St. Johns County, County Attorney, 500 San Sebastian View, St. Augustine, FL 32084 via U.S. Mail, this __11th__ day of September, 2009.

Attorney

FILED

Date Filed in the Office of the Clerk
2009 JUN -8 PH 3: 50

**ORDER OF THE BOARD**
**OF COUNTY COMMISSIONERS**
**OF ST. JOHNS COUNTY, FLORIDA**

CHERYL STRICKLAND
CLERK COUNTY COMMISSION
ST JOHNS COUNTY FL

First Baptist Church of Mandarin, Inc.
3990 Loretto Road
Jacksonville, FL 32223

     Re:    PUD 2008-04 Hopewell.

<u>ORDER DENYING REZONING TO</u>
<u>PLANNED UNIT DEVELOPMENT</u>

     This was a request to rezone approximately 31.75 acres from Open Rural (OR) to Planned Unit Development (PUD) in order to develop a plan that included 25,000 square feet of commercial space on the front portion of the property along Roberts Road and 224,313 square feet of church and church-related accessory uses to the rear of the property with one access point from Roberts Road. The site is located on Roberts Road, which is a two lane road in an area that primarily consists of residential uses, in the Northwest Sector of St. Johns County. The property is designated Residential B (Res B) on the 2015 Future Land Use Map. The adjacent properties are zoned Open Rural (OR) and the majority of existing uses in the area primarily consist of large lot, single family development. Pursuant to the property's current zoning designation, Open Rural (OR), a church is allowed by right.

     The County's professional planning staff recommended denial of the PUD, as proposed, finding that the request does not meet the requirements of the St. Johns County Comprehensive Plan and the St. Johns County Land Development Code, particularly in terms of the negative impact of the proposed commercial uses upon the existing character of the area. Specifically, the County's planners stated that although the church uses are allowed by right, the approval of commercial uses would introduce an inappropriate use into the area and the intensity of the commercial uses is not compatible with the surrounding residential uses. Additionally, the staff found that this proposal conflicted with the goals and objectives of the St. Johns County Northwest Sector Plan and that the creation of a commercial center surrounded by residential development in an area void of commercial development does not meet the intent of the Comprehensive Plan and Land Development Code which prohibit urban sprawl characterized by leapfrog and strip commercial development.

     The Planning and Zoning Agency recommended denial of this rezoning, as proposed, at their March 19, 2009 meeting by a vote of 6 to 1. Issues raised at the meeting included the property's inappropriate location for commercial uses, safety and traffic flow of Roberts Road with additional commercial vehicle trips, and concurrency. The compatibility of the church was not discussed since it is allowed by right under the current zoning designation.



EXHIBIT
tabbies
**A**

RECEIVED

CLERK OF COURTS

DATE 06-08-09

This matter was brought before the Board of County Commissioners (the "Board"), on May 12, 2009. The hearing proceeded according to a Proposed Hopewell PUD Public Hearing Template that was agreed to prior to the meeting by the applicant and opposing counsel, which allowed extensive opportunity for the applicant and all other interested parties to participate and be heard concerning any matters relevant to the rezoning matter before the Commission.

## FINDINGS OF FACT

Having considered said application for rezoning, the recommendations of the County's professional planning staff and the Planning and Zoning Agency, supporting documents, minutes of the PZA hearing and the evidence presented at the public hearing, the Board of County Commissioners makes the following findings of fact as to the Hopewell PUD, as proposed:

1.    The **Hopewell PUD** is not consistent with the St. Johns County Comprehensive Plan. Specifically, Goal A.1 of the Land Use Element related to effectively managed growth, the provision of diverse living opportunities and the creation of a sound economic base.

2.    The **Hopewell PUD** is not consistent with the Future Land Use Designations of Residential-B, specifically Policy A.1.11.2, which provides for Neighborhood Commercial Uses within Residential-B Land Use under the following conditions: commercial use is provided at a size and scale compatible with the surrounding residential area; proposed development will promote compact commercial centers rather than strip commercial development.

3.    The **Hopewell PUD** is not consistent with the St. Johns County Comprehensive Plan, specifically Goal A.1.3.12 as it relates to compatibility of the project to the surrounding area. Particularly in regards to intensity, noise, lighting and traffic flow.

4.    The **Hopewell PUD** does not meet the standards and criteria of Part 5.03.02(B) of the Land Development Code with respect to location. Specifically, the request does not minimize impacts to surrounding land Uses and transportation systems, and the Use is not compatible with surrounding Uses.

5.    The **Hopewell PUD** does not meet the standards and criteria of Part 5.03.03(D)(1)(a) of the Land Development Code in respect to compatibility. Specifically, the request fails to ensure that the intensity of the proposed commercial development does not create external impacts that affect surrounding residential uses.

6.    The **Hopewell PUD** does not meet the standards and criteria of Part 5.03.06(A)(2) of the Land Development Code in respect to compatibility. Specifically, the request will set a precedent for the introduction of an inappropriate use into an area.

7.    The **Hopewell PUD** would adversely affect the orderly development of St. Johns County.

8.  The **Hopewell PUD** is not consistent with the St. Johns County Comprehensive Plan, specifically Policy A.1.13 which provides for neighborhood preservation. Specifically as it relates to the character of surrounding areas being considered in the approval of land development proposals.

9.  The **Hopewell PUD** is not consistent with the St. Johns County Comprehensive Plan, specifically the Goals, Objectives and Policies of A.1.2 as it relates to control of urban sprawl.

**ACCORDINGLY,** the request for rezoning to planned unit development is hereby **DENIED** based on the above-stated Findings of Fact.

Any appeal of this decision may be made by filing a petition for writ of certiorari with the Clerk of the Circuit Court of St. Johns County in accordance with the St. Johns County Code and Florida Rules of Appellate Procedure.

Date of Commission action:  May 12, 2009

BOARD OF COUNTY COMMISSIONERS
OF ST. JOHNS COUNTY, FLORIDA

By: _Cyndi Stevenson_
    Cyndi Stevenson, Chair

Rendition Date:  06-08-09

ATTEST CHERYL STRICKLAND, CLERK

By: _Donna King_
    Deputy Clerk

cc:  Planning Department

     Isabelle Lopez, Esquire
     Lewis, Longman and Walker, P.A.
     245 Riverside Drive, Suite 150
     Jacksonville, FL 32202

     County Attorney's Office

3 of 3